Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:   516.741.0626
esmith@brodskysmith.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT FRIAS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>AEROCLEAN TECHNOLOGIES, INC., AMIN J. KHOURY, DAVID HELFET, MICHAEL SENFT, THOMAS P. MCCAFFREY, HEATHER FLOYD, and TIMOTHY J. SCANNELL,<br><br>　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Frias, by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder action against Aeroclean Technologies, Inc. ("Aeroclean" or the "Company"), Aeroclean's Board of Directors (the "Board" or the "Individual Defendants," collectively with Aeroclean and the Board, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of efforts to merge the Company with Molekule, Inc. ("Parent") via merger subsidiary Air King Merger Sub Inc. ("Merger Sub" and collectively with Parent, "Molekule"), and to enjoin an upcoming stockholder vote on an all-stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a October 3, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Aeroclean shareholders will see their ownership interest in the Company diluted with the merger resulting in Molekule common shareholders owning 49% of the combined Company. As a result, Aeroclean shareholders will see their interest diluted.

3. Thereafter, on December 19, 2022, Aeroclean filed a Registration Statement on Schedule S4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Registration Statement describes an insufficient process with only one goal in mind – to merge the Company with Molekule.

5. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on December 19, 2022, with the SEC in an effort to solicit

stockholders, including Plaintiff, to vote their Aeroclean shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aeroclean and Molekule, provided by Aeroclean to the Company's financial advisor The Benchmark Company, LLC ("Benchmark"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Benchmark and provided to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8. Plaintiff is a citizen of Virginia and, at all times relevant hereto, has been an Aeroclean shareholder.

9. Defendant Aeroclean is a Delaware corporation whose principal executive office is located at 10455 Riverside Dr. Palm Beach Gardens, FL.  Aeroclean's common stock is publicly traded on Nasdaq Stock Exchange under the symbol "AERC."

10. Defendant Amin J. Khoury ("Khoury") has served as director of Company at all relevant times. In addition, Khoury serves as the Chairman of the Board of Directors.

11. Defendant David Helfet ("Helfet") has served as director of Company at all relevant times.  In addition, Helfet also serves as the Company's Chief Executive Officer ("CEO").

12. Defendant Michael Senft ("Senft") has served as director of Company at all relevant times.

13. Defendant Thomas P. McCaffrey ("McCaffrey") has served as director of Company at all relevant times.

14. Defendant Heather Floyd ("Floyd") has served as director of Company at all relevant times.

15. Defendant Timothy J. Scannell ("Scannell") has served as director of Company at all relevant times.

16. The Defendants named in paragraphs 10-15 are referred to herein as "Individual Defendants" or "Director Defendants."

17. Non-Party Parent is a company focused on research and development of clean air technologies.

18. Non-Party Merger sub is a subsidiary of Aeroclean created solely to complete the Proposed Transaction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22. AeroClean Technologies, Inc., an interior space air purification technology company, provides air purification solutions for hospitals and other healthcare facilities. It offers interior air sterilization and disinfection products for the eradication of harmful airborne pathogens, including COVID-19. It provides Purgo, an air filtration machine; and Purgo Lift, an air purification solution for elevators and other wall-mount applications. The company was formerly known as AeroClean Technologies, LLC. AeroClean Technologies, Inc. was founded in 2011 and is headquartered in Palm Beach Gardens, Florida.

23. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a June 30, 2022 press release announcing its 2022 Q2 Financial Results, the Company highlighted such milestones as completing a $15.0 million private placement, positioning the company to evaluate a wide range of strategic opportunities including acquisitions. Additionally, the Company was granted U.S. Food and Drug Administration ("FDA") 510(k)

clearance for Pūrgo™ medical grade air hygiene technology intended for medical use and the elimination of harmful airborne microorganisms.

24. Speaking on the positive results, CEO DiBona commented in the Press Release, "In the second quarter, we were pleased to receive FDA 510(k) clearance for our Pūrgo™ device, and I again thank the administration for their thorough review of our patented air hygiene technology," …... "Our Pūrgo™ system, which is powered by our patented SteriDuct™ technology, has been rigorously tested in a wide variety of laboratory and real-world indoor spaces. The designation of our Pūrgo™ technology as a Class II Medical Device represents a major milestone for our business, and further differentiates us from competitors in both performance and efficacy. In fact, we are already seeing increased interest from new potential clients as a result of this development."

25. The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Aeroclean. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

26. Nevertheless, the Individual Defendants have caused Aeroclean to enter into the Proposed Transaction.

*The Flawed Sales Process*

27. The Registration statement is materially deficient. The Registration Statement fails to disclose proper reasoning as to why the Board agreed to a transaction which yields no consideration for Company shareholders and dilutes the interests of common shareholders such as plaintiff.

28. The Registration statement fails to disclose whether a committee of disinterested directors was formed to evaluate the Proposed Transaction, and if so, what powers the committee had in doing so.

29.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Molekule, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.  The Registration Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Molekule, throughout the sales process, if any, would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31.     On October 3, 2021, Aeroclean and Molekule issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **PALM BEACH GARDENS, Florida – October 3, 2022 –** AeroClean Technologies ("AeroClean" or the "Company") (Nasdaq: AERC), an air hygiene technology company, and Molekule, Inc. ("Molekule"), a market leader for premium air purifiers, today announced they have entered into a definitive agreement to combine the companies in an all-stock merger. The combined company will have the largest range of proprietary and patented, FDA-cleared air purification devices to address the estimated $15 billion, rapidly growing global air purification market. The combined company is expected to generate approximately $45 million of revenues in FY 2022 on a pro forma combined basis and is expected to have a solid balance sheet with a strong liquidity profile upon consummation of the merger.
>
> Under the terms of the Merger Agreement, which has been unanimously approved by the boards of directors of both companies, AeroClean stockholders will own 50.5%, and Molekule stockholders will own 49.5%, of the outstanding common equity of the combined company on a pro forma basis upon consummation of the merger. AeroClean will change its name and ticker symbol to Molekule, Inc. (Nasdaq: MKUL) upon consummation of the merger. The combined company will remain headquartered in Palm Beach Gardens, Florida, with significant operations in Lakeland, Florida and offices in San Francisco, California.

Amin Khoury, Chairman of the Board of AeroClean, said, "Our complementary operations and cultures and our shared commitment to customer satisfaction will provide us with an enhanced ability to serve our clients and to create value for stockholders. We believe the combined company will be able to generate significant, organic revenue growth particularly in the B2B channel as we begin the roll out our SaaS IAQ solutions. In addition we expect to be well-positioned to pursue additional strategic acquisitions."

Brad Feld, Molekule board member and Foundry partner, added, "We are pleased to announce the combination of these two strong companies, creating a market leader for premium air purification products. We look forward to working with the AeroClean team, and we are excited about the value creation potential for all stockholders."

Jason DiBona, CEO of AeroClean, added, "We are excited to be combining with a market leader for premium, proprietary, patented, and FDA-cleared air purification products to capitalize on an estimated $15 billion global air purification market that is projected to double by 2030 based on current growth rates. We expect our combined teams' expertise and capabilities will drive further innovation and expansion of IoT-enabled indoor air quality ("IAQ") and SaaS data solutions to support our clients' sustainability and ESG initiatives."

Jonathan Harris, CEO of Molekule, who has driven significant growth in his recent roles with Roku and GoPro, added, "Both Molekule and AeroClean contribute unique industry leadership, which we expect will enable the combined company to aggressively innovate and drive greater adoption of our growing range of products and services."

**Compelling Strategic and Financial Benefits**

AeroClean and Molekule expect the combined company will realize the following strategic and financial benefits as a result of the merger:

- Creation of the First Publicly Traded Provider of a Suite of Premium, Proprietary and Patented, FDA-cleared Air Purification Devices: The combined company's full range of complementary technologies will include a new generation of IoT-enabled devices and SaaS IAQ solutions which is in development.

- Launch of a SaaS Product Offering to Drive Recurring Revenue and Financial Performance: The combined company's integrated IoT devices and IAQ solutions, including the newly released business software, Molekule Air Platform (MAP), is expected to enable the company to begin

- to sell monitoring and device control subscriptions that enable facility managers to provide enterprise-wide clean indoor air.
- Expedited Opportunities for Commercial Synergies in the B2B space: The combined company's strategy is to introduce each other's products into the other's existing sales and distribution channels to accelerate B2B market penetration and to expand further into healthcare, government, hospitality and education verticals.
- Solid Balance Sheet, Liquidity and Access to Capital Provide Opportunities for Growth: On an estimated pro forma combined basis as of September 30, 2022, the combined company would have had approximately $30 million in cash and total long-term debt of approximately $37 million, which is interest-only through April 2024 and amortizing through April 2027.
- Reinforced Platform for Future M&A: The combined company will be well-positioned to selectively pursue additional value-creating M&A opportunities within the broader IAQ and cleantech industries.

**Approvals and Closing**

The transaction has been unanimously approved by the board of directors of both AeroClean and Molekule and by a majority of AeroClean's stockholders. In addition, holders of a majority of the shares of Molekule's outstanding preferred stock have executed stockholder support agreements in which they have agreed to support the transaction and vote in favor of the proposed transaction. The merger is expected to close early in the first half of 2023, following the satisfaction of customary closing conditions, including among others the SEC declaring AeroClean's registration statement on Form S-4 effective and Molekule stockholder approval.

*Potential Conflicts of Interest*

32.     The breakdown of the benefits of the deal indicates that Aeroclean insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Aeroclean.

33. Thus, while the Proposed Transaction is not in the best interests of Aeroclean, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

34. On December 19, 2022, the Aeroclean Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

35. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

    a. Adequate information as to why the board agreed to a transaction which will dilute the interests of common shareholders;

    b. Adequate disclosure as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction and if so, what powers the committee had in doing so;

    c. Whether the terms of any confidentiality agreements entered during the sales process between Aeroclean on the one hand, and any other third party

      (including Molekule), if any, on the other hand, differed from one another, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Molekule) throughout the sales process, if any, would fall away; and

e.  The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Aeroclean's and Molekule's Financial Projections*

36.    The Registration Statement fails to provide material information concerning financial projections for Aeroclean provided by Aeroclean management and relied upon by Benchmark in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

37.    Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Benchmark notes that it reviewed, internal data regarding the Company's operations and financial outlook.

38.    The Registration Statement, therefore, should have, but fails to provide, certain information in the projections that Aeroclean management provided to the Board and Benchmark. Courts have uniformly stated that "projections … are probably among the most highly-prized

disclosures by investors. Investors can come up with their own estimates of discount rates or []
market multiples. What they cannot hope to do is replicate management's inside view of the
company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del.
Ch. 2007).

39. With regard to *Certain AeroClean Unaudited Financial Forecasts*, the Registration
Statement fails to disclose material line items for all projection metrics utilized in Benchmark
analyses:

   a. With respect to the *Aeroclean Base forecasts*, disclose the following:
      i. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: net loss, interest expense, and income taxes; and
      ii. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; net loss, interest expense, income taxes, depreciation and amortization, and stock-based compensation expense.
   b. With respect to the *Aeroclean Upside forecasts*, disclose the following:
      i. EBIT, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically: net loss, interest expense, and income taxes; and
      ii. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; net loss, interest expense, income taxes, depreciation and amortization, and stock-based compensation expense.

40. With regard to *Certain Molekule Unaudited Financial Forecasts* prepared by Molekule management, the Registration Statement fails to disclose material line items for all projection metrics utilized in Benchmark analyses:

41. With respect to the *Molekule Base forecasts*, disclose the following:

    a. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; net loss, interest expense, income taxes, depreciation and amortization, and stock-based compensation expense.

42. With respect to the *Molekule Upside forecasts*, disclose the following:

    a. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate this metric, including specifically; net loss, interest expense, income taxes, depreciation and amortization, and stock-based compensation expense.

43. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44. The Registration Statement fails to disclose the underlying bases on which the alternative cases of projections rely.

45. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Benchmark's financial

analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Benchmark*

47. In the Registration Statement, Benchmark describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Selected Public Company Analysis*, the Registration Statement fails to disclose the following:

   a. The EV/REV (2022) multiple range selected as well as the inputs metrics and assumptions used to determine the range;

   b. The EV/REV (2023) multiple range selected as well as the inputs metrics and assumptions used to determine the range;

   c. Molekule's estimated cash as of September 30, 2022; and

   d. Molekule's estimated net debt as of September 30, 2022.

49. With respect to the *Precedent Transaction Analysis*, the Registration Statement fails to disclose the following:

   a. The date on which each transaction compared closed;

   b. The value of each transaction compared;

   c. The specific EV/Revenue reference range selected as well as the inputs, metrics,

14

     and assumptions used to calculate the range; and

    d. The estimated cash, debt and expenses related to the Proposed Transactions used to estimate an equity value for Molekule.

50. With respect to the *Discounted Cash Flow Analysis* for Molekule, the Registration Statement fails to disclose the following:

    a. The specific inputs and assumptions used to determine a discount rates ranging from 14.2% to 18.2%;

    b. Molekule's weighted average cost of capital;

    c. The inputs, metrics and assumptions used to determine Terminal values of 2.4x and 1.4x revenue;

    d. Molekule's net cash;

    e. Molekule's net debt; and

    f. The value of expenses related to the Proposed Transaction.

51. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

52. Notably, the Registration Statement contains no material financial analysis regarding the Company. Without this information, common shareholders such as Plaintiff are deprived of the information necessary to make an informed decision.

53. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Aeroclean

stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

54. Plaintiff repeats all previous allegations as if set forth in full herein

55. Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

56. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

57. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58. The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60. The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

61. The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Defendants)**

62. Plaintiff repeats all previous allegations as if set forth in full herein.

63. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

64. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Aeroclean's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

66. The Individual Defendants acted as controlling persons of Aeroclean within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the

Individual Defendants had the power and authority to cause Aeroclean to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Aeroclean and all of its employees. As alleged above, Aeroclean is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 22, 2022                **BRODSKY & SMITH**

By: _/s/ Evan J. Smith_
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*